IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-00825-CMA-SBP

PAWA BOX SALES GROUP, LCC,

    Plaintiff,

v.

ROOFER ELECTRONICS TECHNOLOGY (SHANWEI) CO., LTD,

    Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

This matter is before the Court on Plaintiff PawaBox Sales Group, LLC's Motion for Default Judgment. (Doc. # 30.) For the following reasons, PawaBox's motion is GRANTED.

## I.  BACKGROUND

**A.  FACTS**

Plaintiff PawaBox Sales Group, LLC is a Colorado-based LLC that produces and sells battery products to individuals and businesses. (Doc. # 1 at 2.) PawaBox's members are citizens of Colorado and other states (Doc. # 31 at 1.) Defendant Roofer Electronics Technology (Shanwei) Co., Ltd. is allegedly a company that manufactures batteries and exports them to the United States from its principal place of business in Shenzhen, Guangdong, China. (Doc. # 1 at 2.)

According to PawaBox's complaint, in 2018, PawaBox sought to design a pre-charged, single-use mobile-device-charging external battery. (*Id.* at 3–4.) PawaBox aimed to design this device—the "PawaMini"—to charge up to 40% of a device's capacity with a three-year shelf life. The PawaMini would feature an on/off switch to preserve power and would be biodegradable for the sake of disposal. (*Id.* at 4.) PawaBox alleges that it completed the PawaMini's original design with a manufacturer called Shenzhen Konlison Electronic Co., Ltd. (*Id.*)

In October 2018, Roofer met with PawaBox and proposed improvements to the original PawaMini design. The parties discussed PawaBox's expectations for the product, and, according to the complaint, Roofer explicitly confirmed its understanding of what features PawaBox wanted for the PawaMini. (*Id.* at 4–5.) Following this meeting, a Roofer engineer named Gong Shaul Zou contacted PawaBox in December 2018 via WeChat to demonstrate Roofer's new PawaMini design. (*Id.* at 6.) Based on this demonstration, PawaBox began paying Roofer to manufacture and ship PawaMini units. Between January 23, 2019 and October 10, 2019, PawaBox paid Roofer approximately $3,352,100.16 for approximately 2.5 million PawaMini units. *See* (Doc. # 31 at 2–4, 10.)

According to PawaBox, Roofer's PawaMinis were materially defective in multiple respects. For example, Roofer's product packaging featured a one-year expiration date despite allegedly promising PawaBox that the PawaMinis would have a three-year shelf life. (Doc. # 1 at 7–8.) Next, due to the lack of an on/off switch—a design change suggested by Roofer—the PawaMini's charging tip continuously discharged power, which decreased battery life. (*Id.* at 9.) Finally, PawaBox alleges that Roofer's

2

PawaMinis failed to charge devices even when the batteries have power and that they spontaneously combusted during use. (*Id.* at 10.) To remedy at least some of these defects, Roofer allegedly promised to reimburse PawaBox. (*Id.* at 6–7.) However, according to the complaint, Roofer never did. (*Id.* at 10.)

**B.   PROCEDURAL HISTORY**

On February 23, 2021, PawaBox emailed Roofer a copy of the complaint and provided notice of intent to file suit. (*Id.* at 2); *see also* (Doc. # 8 at 1); (Doc. # 8-1). Roofer did not respond. (Doc. # 8 at 1.) On March 19, 2021, PawaBox began this lawsuit, alleging contractual breaches along with design and manufacturing defects. (*Id.* at 11–13.) PawaBox attempted to perform service of process on Roofer via China's Ministry of Justice—the designated entity for performing service of process under the Hague Convention. Despite PawaBox's diligence, it was unable to perform service of process. *See generally* (Docs. ## 8, 17, 27.) At no point in time did Roofer or an attorney representing Roofer enter an appearance in this case. Consequently, on July 8, 2024, PawaBox filed the instant motion for default judgment. (Doc. # 30.)

## II.   APPLICABLE LAW

Pursuant to the Federal Rules of Civil Procedure, courts must enter a default judgment against a party that has failed to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(b)(2). Default judgment may be entered by the clerk of court if the claim is for "a sum certain." Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)). Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (quotation omitted). "In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment serves as such protection." *Id.* (quotation omitted).

Before granting a motion for default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Olcott*, 327 F.3d at 1125 (stating that upon default, the defendant admits the plaintiff's allegations); *see also Person. Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1956) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded."). "The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits." *Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-cv-02065-RM, 2019 WL 399228, at *2 (D. Colo. Jan. 31, 2019). Finally, the Court turns to damages. Default judgment "cannot be entered until the amount of damages has been ascertained." *Parra v. Accurate Precision, LLC*, Civil Action No. 22-cv-00085, 2022 WL

4

3280160, at *3 (D. Colo. Aug. 11, 2022). The Court may "conduct hearings or make referrals" to "determine the amount of damages," Fed. R. Civ. P. 55(b)(2), but if "the amount claimed is a liquidated sum or one capable of mathematical calculation," the court may dispense of a hearing. *Id.* In determining the amount of damages, "the court may rely on detailed affidavits or documentary evidence." *Id.*

### III. ANALYSIS

**A. JURISDICTION**

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because PawaBox has shown that the parties are completely diverse and that the amount in controversy exceeds the statutory threshold, $75,000. *See* (Doc. # 1 at 2; Doc. # 31 at 1.)

As for personal jurisdiction, as explained below, Roofer's purposeful availment of the forum state empowers this Court to exercise specific personal jurisdiction over Roofer. *See generally Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008); *Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 592 U.S. ___, 140 S. Ct. 917 (2021). The Court notes that Roofer solicited contracts to and did in fact manufacture goods for PawaBox, a resident of the forum state, and that PawaBox's injuries arose because of how Roofer manufactured those goods. Moreover, nothing in the record suggests that exercising jurisdiction would offend traditional notions of fair play and substantial justice. This is not a case of mistaken identity—Roofer previously demonstrated the capacity to communicate with PawaBox but has failed to communicate since before the complaint was filed. Moreover, PawaBox's service of

process on Roofer was complete and adequate in accordance with Fed. R. Civ. P. 4 and Article 15 of the Hague Service Convention. *See* (Doc. # 19 (establishing successful delivery of the summons and complaint by the designated Central Authority of China, the Chinese Ministry of Justice).) PawaBox effected service on July 18, 2022, by serving the summons and complaint at Roofer's Lufeng City facility, and "staff of the company signed" the certificate of service. *Id.* at 1.) PawaBox has therefore made a sufficient *prima facie* showing of personal jurisdiction. *See Newsome v.* Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013); *Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015).

**B.   FAILURE TO DEFEND**

The record makes manifestly clear that Roofer completely avoided defending this lawsuit. Roofer neglected to answer or otherwise respond to PawaBox's complaint despite being served on July 18, 2022, and the time to enter an appearance has long since passed. *See* Fed. R. Civ. P. 12(a). The Clerk of Court, therefore, properly entered a certificate of default against Defendants on April 26, 2023. (Doc. # 23.) The Court accordingly finds that Defendants have failed to defend or appear in this lawsuit.

**C.   LIABILITY**

    1.   <u>Breach of Warranty</u>

As explained below, the Court finds that the complaint sufficiently alleges that Roofer breached its contracts with PawaBox for the manufacturing of PawaMini products by virtue of the various warranties associated with those agreements.

When a seller makes a promise "which relates to the goods and becomes part of the basis of the bargain," the seller creates an express warranty. Colo. Rev. Stat. § 4-2-313(1)(a). Implicit within any contract for goods is, *inter alia*, an implied warranty promising that the goods are merchantable, *i.e.*, the goods must "[p]ass without objection in the trade under the contract description." Colo. Rev. Stat. § 4-2-314. To prove breach of warranty in Colorado, a plaintiff must show: (1) the existence of an express or implied warranty, (2) breach of said warranty, (3) proximate causation linking the breach to losses claimed as damages, and (4) the defendant's receipt of timely notice of the breach. *E.g.*, *Molina v. Ford Motor Co.*, 441 F. Supp. 3d 1176, 1182 (D. Colo. 2020).

Accepting as true the well-pleaded allegations in the complaint, the Court finds that Roofer made both express and implied warranties. Roofer expressly promised an "1800 mAh lithium battery . . . that would be able to reliably charge a device for a period of three years [from] manufacture." (Doc. # 1 at 5.) Further, implicit within Roofer's promise to produce these PawaMinis was the implied promise that these units would actually recharge a device.

The Court next finds that Roofer breached said warranties. Indeed, the record is replete with allegations of Roofer's PawaMini design failures. Allegedly, the millions of PawaMini units that PawaBox received could not hold a charge for longer than eight months—when Roofer promised a three-year shelf life. (Doc. # 30 at 8 (citing Doc. # 1 at 8).) Rather than reliably charge a device, Roofer's PawaMinis were prone to overheating, if not spontaneously combusting. (*Id.* (citing (Doc. # 1 at 9).) This finding

7

naturally leads to the conclusion that PawaBox incurred damages from Roofer's breaches of warranty. The complaint alleges that the design defects—limited shelf life, inability to function as a charger—rendered the PawaMini units worthless, which forced PawaBox to incur a significant financial loss. (*Id.* at 9 (citing (Doc. # 1 at 48, 50–53).) Finally, the Court finds that Roofer timely received notice of its failure to provide a three-year shelf life as early as October 2019 and notice of other design defects in 2020. (*Id.* (citing (Doc. # 1 at 9; Doc. # 31 at 2).)

In sum, the Court finds that the complaint (Doc. # 1) and various exhibits (Doc. # 31) provide a "sufficient basis" for the entry of default judgment on PawaBox's breach of warranty claims. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quotation omitted)).

      2.     <u>Material Misrepresentation</u>

As explained above, the complaint's well-pleaded allegations adequately explain that Roofer's PawaMini products failed to deliver what Roofer promised. The complaint alleged that Roofer knew that it did not design the PawaMini boxes as promised—specifically, Roofer allegedly knew that its PawaMini units lacked a firmware feature designed to preserve the battery's charge while obviating the need for a physical on/off switch. (Doc. # 30 at 10 (citing (Doc. # 1 at 5–6, 9).)

**D.**    **DAMAGES**

Default judgment cannot be entered without first determining the prevailing party's actual damages. *See, e.g.*, *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). One of the main reasons for this requirement is to prevent plaintiffs who obtain

8

default judgments from receiving more in damages than is supported by actual proof. *Id.* at 773 n.2. To address that concern, Fed. R. Civ. P. 55(b) empowers courts to consider a wide range of information in order to "determine the amount of damages." For example, "the court may rely on detailed affidavits or documentary evidence." *Chisolm v. Global Graphics & Designs Inc.*, No. 20-cv-00344, 2021 WL 4426951, at *1 (D. Colo. Sept. 27, 2021) (quoting *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010)).

PawaBox essentially seeks its reliance damages—the amount necessary to return PawaBox to its original position, which is the amount that PawaBox sent Roofer for the defective PawaMinis. (Doc. # 30 at 11.) This request aligns with what Colorado's General Assembly has decided is the appropriate measure of damages for breach of warranty: "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Colo. Rev. Stat. § 4-2-714(2). Here, the value of the goods accepted—the PawaMinis—was practically zero. (Doc. # 30 at 11.) Further, the Court agrees with PawaBox that, at the very least, the value of the PawaMinis as if they had been warranted would be, at the very least, what PawaBox paid to buy them from Roofer. (Doc. # 11.) The Court finds this reasonable. Considering the written record, and particularly PawaBox's paper trail, the Court calculates Roofer's damages at $3,323,500.16.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that

1. Plaintiff PawaBox Sales Group, LLC's Motion for Default Judgment (Doc. # 30) is GRANTED;

2. Judgment shall enter in favor of Plaintiff PawaBox Sales Group, LLC and against Defendant Roofer Electronics Technology (Shanwei) Co., Ltd. In the amount of $3,323,500.16, plus post-judgment interest as permitted by law, pursuant to 28 U.S.C. § 1961, until paid in full;

3. Plaintiff shall have its costs upon compliance with Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

4. The Clerk shall terminate this action.

DATED: October 17, 2024.

BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
Senior United States District Judge